These consolidated appeals concern payment by the State of office-overhead expenses to lawyers who accept appointments to represent indigent clients before the courts of this state.
 Facts and Procedural History
Daniel W. Wright is a lawyer practicing in Alabama who accepts indigent defendants as clients pursuant to § 15-12-21, Ala. Code 1975.[1] Before February 1, 2005, Wright and all other attorneys representing such indigent clients were paid an hourly rate, under Ala. Code 1975, § 15-12-21, and were reimbursed for office-overhead expenses at a rate to be preapproved by the trial court. *Page 773 
On February 1, 2005, the attorney general issued Op. Att'yGen., No. 2005-063, concluding that the comptroller did not have to pay overhead under § 15-12-21(d), Ala. Code 1975, because such expenses were not "expenses reasonably incurred" in defense of one's client as that term is used in § 15-12-21(d). Thus, the comptroller began withholding payment of office-overhead expenses on February 1, 2005.
Wright sued Robert L. Childree, the comptroller for the State of Alabama, for withholding office-overhead payments, alleging, among other things, breach of contract.[2] Wright sought a judgment declaring that the comptroller's denial of payment was improper, and he sought injunctive relief requiring the comptroller to resume paying office-overhead expenses and to reimburse attorneys for back payments. Wright also sought certification of a class consisting of all Alabama lawyers who were appointed to represent any indigent defendant in Alabama as of February 1, 2005, and who had been improperly denied payment of office-overhead expenses for indigent-defense work after February 1, 2005, but excluding lawyers who are "contract counsel" under Ala. Code 1975, § 15-12-26, or public defenders under § 15-12-41. Wright also sought costs and expenses together with a reasonable attorney fee. Wright alleged that the doctrine of res judicata or collateral estoppel now barred the comptroller from avoiding payment of office-overhead expenses based on the comptroller's failure to appeal from the Covington Circuit Court's order inChristensen v. Childree, No. CV-2002-50. InChristensen v. Childree, the Covington Circuit Court held that office-overhead expenses are encompassed in the term "expenses reasonably incurred" as that phrase is used in §15-12-21(d). After the comptroller submitted his answer, Wright submitted a "Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment on the Issue of Liability with Class Issues Reserved." In this motion, Wright clarified what he called liability as, "that the [comptroller] must resume overhead payments on indigent defense cases." In this motion, Wright also requested "that the Court reserve class issues pending admissions by Mr. Childree of the necessary class certification prerequisites."
Wright apparently sent the circuit court a proposed order, which is not included in the record before this Court, requesting the payment of interest on the withheld payments. Evidently, in this proposed order, Wright included the payment of interest on any amounts he was due, because in his response to the proposed order the comptroller argues against paying interest. The record before this Court indicates that Wright did not request interest, nor did he mention interest until he filed his proposed order.[3]
On September 28, 2005, the trial court entered its order, directing the comptroller to "resume statewide
payments of over-head hours on all indigent defense fee declarations which are otherwise properly completed, approved by a judge, and submitted to him for payment" and "to pay all overhead payments withheld from any lawyer in reliance on Op. Atty. Gen. No. 2005-063 (February 1, 2005) to all such lawyers *Page 774 statewide." The trial court stated in its order that the parties agreed that the comptroller would abide on a statewide basis by the court's resolution of the dispute, and that, therefore, their agreement pretermitted any need to address class certification. The trial court "decline[d] to address the other issues raised by [Wright] and decline[d] to award attorney fees" and did not specifically address interest in its order. The court certified the judgment as final, pursuant to Rule 54(b), Ala. R. Civ. P.
After filing an unsuccessful motion to alter or amend the order, Wright filed his notice of appeal on October 28, 2005. In the notice of appeal, Wright alleged that the trial court did not grant complete relief because the court refused to award interest on the office-overhead-expense payments previously withheld, to award attorney fees, to direct the comptroller to provide the information necessary for class certification, and to allow Wright additional time to submit a fee application.
On November 8, 2005, the comptroller filed his cross-appeal, alleging that, based on Ala. Code 1975, § 15-12-21, and the 2005 attorney general's opinion, the trial court's decision was incorrect.
 History of the Payment of Office-Overhead Expenses
Originally, the statute in question, § 15-12-21(d), Ala. Code 1975, set out hourly rates and limits on total fees for attorneys representing indigent defendants and also established that "[c]ounsel shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court."
In 1993, the Alabama Court of Criminal Appeals in May v.State, 672 So.2d 1307, 1308 (Ala.Crim.App. 1993), held that "office overhead expenses are by law encompassed in the term `expenses reasonably incurred' as that term is used in § 15-12-21(d)." This Court quashed as improvidently granted the petition for a writ of certiorari filed in May v.State, 672 So.2d 1310 (Ala. 1995). The Court of Criminal Appeals in Ex parte Barksdale, 680 So.2d 1029, 1030
(Ala.Crim.App. 1996), cited the Court of Criminal Appeals' holding in May for the proposition that "office overhead fell into the category of expenses reasonably incurred in the defense of a defendant."
On April 19, 1996, the then attorney general issued identical opinions in responses to inquiries from the comptroller and the finance director, who asked whether the trial court was required to approve office-overhead expenses in advance of the actual occurrence of those expenses. The attorney general concluded that office-overhead expenses claimed under §15-12-21(d) must be approved by the trial court in advance of being incurred before the comptroller may reimburse such expenses. In other words, the comptroller may not reimburse appointed counsel for office-overhead expenses incurred before the date the trial court approved the expenses. (Op. Att'yGen., No. 1996-191, and No. 1996-192.)
This Court, in Ex parte Smith, 698 So.2d 219, 224-25
(Ala. 1997), discussed the Court of Criminal Appeals' decisions in May and Barksdale. Explicitly adopting the holding of May, this Court stated, "[w]e agree with the Court of Criminal Appeals' holding in May that § 15-12-21 authorizes payment to a court-appointed attorney for overhead expenses reasonably incurred in defense of an indigent defendant." 698 So.2d at 224.
In 1999, the legislature enacted Act No. 99-427, which amended § 15-12-21(d). In that amendment, the legislature increased the hourly rates for attorneys appointed to represent indigent defendants. In addition, the legislature changed the sentence that provided that counsel be reimbursed *Page 775 
for "expenses reasonably incurred in such defense" to read that counsel would be reimbursed for "expenses reasonably incurred in the defense of his or herclient." (Emphasis added.)
The attorney general issued an opinion in 2001, addressing the issue of office-overhead expenses. Op. Att'y Gen., No. 2002-022 (Oct. 15, 2001). He stated that based on May,Barksdale, and the language of § 15-12-21 (even after the 1999 amendment), an attorney who represents indigent defendants could be reimbursed for office-overhead expenses, even if the attorney worked out of his or her home.
On March 15, 2002, this Court issued an opinion on application for rehearing in Lyons v. Norris, 829 So.2d 748
(Ala. 2002).[4] In Lyons, the finance director and the comptroller denied reimbursement for office-overhead expenses of several attorneys who had represented indigent criminal defendants. Those attorneys filed a declaratory-judgment action and a petition for a writ of mandamus in Montgomery County. One attorney also sued the comptroller, alleging negligence and wantonness, while another attorney sought certification of a class action. The trial court consolidated these related cases. Following a hearing, the trial court denied class certification. The trial court issued a writ of mandamus instructing the State officials to approve all attorney-fee declarations that include orders approving office-overhead expenses filed prior to or contemporaneously with the attorney-fee declarations. The State officials appealed. The dispute in Lyons turned on the meaning attributed to the phrase "approved in advance by the trial court" in § 15-12-21(d). In a footnote, the main opinion addressed office-overhead expenses:
 "In June 1999, the Alabama Legislature passed the `Investment in Justice Act of 1999.' Act No. 99-427, 1999 Ala. Acts. In pertinent part, Act No. 99-427 substantively amended § 15-12-21 to increase attorney fees for appointed work at the trial level. Under the Act, the rate of compensation for attorneys representing indigent criminal defendants was increased to $40 per hour for out-of-court time and $60 per hour for in-court time. The fee limits, which have been increased substantially, are now based on the severity of the crime, and there is no limit on the total fee that can be paid to an attorney representing a defendant charged with a capital offense or with an offense that carries a possible sentence of life imprisonment without parole. Section 15-12-21, as amended, also specifies that `the court for good cause shown may approve an attorney's fee in excess of the maximum amount allowed.' Section 15-12-21 now provides that to be reimbursable, any expenses incurred must be incurred, specifically, `in the defense of his or her client.' Here, the attorneys seek reimbursement for office-overhead expenses, including but not limited to: professional license fees; malpractice, casualty, health, general-liability, and workers' compensation insurance; office salaries; ad valorem taxes; office supplies; postage and express-delivery charges; depreciation for office equipment and furniture; local and long-distance telephone charges; `CLE expenses, including travel and lodging for out-of-town seminars (incurred one or more times per year)'; utilities; various bank fees and interest on business loans; and other professional fees. Although whether these fees are actually incurred `in the defense of [an attorney's] client' *Page 776 
is highly questionable, that issue is not presently before this Court. Neither does this Court have before it the question of the applicability of Act No. 99-427 to office-overhead expenses. However, the change in language in Act No. 99-427 from `any expenses reasonably incurred in such defense' to `any expenses reasonably incurred in the defense of his or her client,' prohibits reimbursement of office-overhead expenses based on calculations of the pro rata cost of an attorney's criminal practice compared to his overall practice. At the same time, it precludes advance calculations of office-overhead expenses for a specific criminal defendant. The increase in fees, together with the ability of the courts to approve fees in excess of the mandated maximum `for good cause shown,' further indicates the Legislature's intent to eliminate reimbursement for `office-overhead expenses' under Act No. 99-427."
829 So.2d at 751 n. 1. Justices Brown and Stuart concurred in the main opinion, which was authored by Chief Justice Moore. Justice Harwood concurred specially, writing that the office-overhead-expenses discussion in footnote 1 of the main opinion was not necessary and that the issue of office-overhead expenses was not properly before the Court. He was joined in that opinion by Justices Houston, Lyons, and Woodall. Justice Johnstone concurred in part and dissented in part, dissenting as to that part of the main opinion regarding the preapproval of expenses, and concurring in overruling the application for rehearing because the applicant was not properly before the Court. Justice See joined the concurring portion of Justice Johnstone's special writing.
As the trial court states in its order in this case, the decision in Lyons triggered two reactions. The first was Christensen v. Childree, CV-2002-50, an action in Covington County against the comptroller. At oral argument, Wright's counsel stated that the comptroller briefly stopped paying office-overhead expenses in 2002 pursuant to an executive order and that that was the basis for the Covington County action. The Covington Circuit Court held that office-overhead expenses were to continue under § 15-12-21, even though the statute had been amended. The comptroller did not appeal that decision, and he continues to pay office-overhead expenses in Covington County, even though he ceased paying office-overhead expenses in the rest of the state for a second time on February 1, 2005. The second reaction of the decision in Lyons was Act No. 2002-129, Ala. Acts 2002, a joint resolution by the legislature. This joint resolution provided:
 "That it was and continues to be the intent of this Legislature pursuant to the enactment of Act 99-427, H. 53 of the 1999 Regular Session, the Investment In Justice Act of 1999, that over-head expenses shall be paid in addition to in-court and out-of court fees to attorneys appointed to represent indigent persons."
In 2005, the comptroller requested an opinion from the attorney general asking whether an attorney representing an indigent defendant may claim both office-overhead expenses at a rate approved in advance by the trial court and expenses under the Uniform Guidelines for Attorney Fee Declarations. On February 1, 2005, the attorney general issued an opinion concluding, "Act 99-427 amended section 15-12-21(d) of the Code of Alabama to eliminate overhead as an expense for which an appointed attorney can be reimbursed. An attorney can only be reimbursed for out-of-pocket expenses that are approved by the trial court in advance of being incurred." Op. Att'y Gen., No. 2005-063 (February 1, 2005). The attorney general based his opinion on the language in the main opinion in Lyons
and *Page 777 
argued that Act No. 2002-129, the legislative joint resolution, was not controlling. The attorney general's opinion did not mention the earlier attorney general's opinions from 1996 or 2001, nor did it mention Christensen v.Childree.
Based on the 2005 attorney general opinion, the comptroller ceased payments of office-overhead expenses to lawyers appointed to represent indigent defendants under Ala. Code 1975, § 15-12-21.
 Analysis
As a threshold matter, we address Wright's argument that the comptroller's cross-appeal should be dismissed based on a "concession" made in the trial court by a lawyer for the comptroller to the effect that the State is obligated under § 15-12-21(d) to pay office-overhead expenses. Wright refers to the following emphasized statements by the lawyer representing the comptroller at the trial court's hearing on Wright's "Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment on the Issue of Liability with Class Issues Reserved":
 "[Attorney]: Your Honor, I think there is — from the standpoint of the comptroller, he requested the AG opinion. The AG's office delivered the opinion on February 1, and he has relied on that opinion to direct him, to advise him in how he should act in his official capacity.
 "I think that we are here in the proper way to be here to contest that, which is a declaratory judgment action, and I don't have any great words to say other than exactly what Mr. Douglas [Wright's lawyer] said is that we look to this Court to provide some direction for the comptroller in light of what previous caselaw has said, the Lyons [v. Norris, 829 So.2d 74.8 (Ala. 2002)] opinion included, and what the Attorney General's office — the opinion that they rendered or issued to the comptroller.
 ". . . .
 "[Attorney]: It has — some of this about the Christensen [v. Childree] case, and I will you — well, I don't want to say that. The Christensen case was determined in consultation with other assistant — with the Attorney General's office to be the law there and not be applicable anywhere else in the state.
 "This is why — that's essentially why the comptroller is acting that way or acting that way for fee declarations that come out of that particular circuit.
 "THE COURT: There is something disturbing about that. That makes absolutely no sense whatsoever, I mean, basically discriminating against everybody else in every other judicial circuit but Covington County. That is not right.
 "[Attorney]: Well, I cannot necessarily disagree with that.
 "THE COURT: I know you can't. What is your take on the resolution from the legislature?
 "[Attorney]: My take on that resolution is that it was an attempt to clarify — it was the legislature's shot at clarifying what was intended in 15-12-21, the amended 15-12-21. It was in response to what was said in a footnote in the Lyons opinion, which that footnote formed the basis, I think, of the Attorney General's opinion, I think the foot-note by [Chief] Justice Moore.
 "I also note that in the legislation that did arise — I think it was during the special session when the legislature was trying to amend that code section further, I did note that the language in that resolution was going to be inserted into that order to make it very clear.
 ". . . .
 "[Attorney]: So, I mean, I don't — I don't necessarily have a disagreement with Mr. Douglas on this. I don't think *Page 778 the comptroller necessarily does. I think the comptroller necessarily does. I think the comptroller just wants to make sure that his position is he was advised on a course of action, and that is what he has been doing."
Although the comptroller admits that the lawyer's arguments could have been more forceful, he contends that his position has been made clear throughout the filings and proceedings in the trial court: 1) that office-overhead expenses are not reimbursable under § 15-12-21 (d) as amended; 2) that the attorney general's 2005 opinion, upon which the comptroller relies, draws support from Lyons v. Norris,829 So.2d 748; 3) that the Covington Circuit Court's decision isChristensen v. Childree is binding only in that judicial circuit; 4) that the doctrine of res judicata and other related doctrines do not preclude the comptroller's positions; and 5) that Wright is not entitled to attorney fees or prejudgment interest. We agree that based on the foregoing, the comptroller did not concede liability in its argument. Simply because the lawyer for the comptroller chose to acknowledge the confusion regarding the interpretation of §15-12-21, without a more explicit concession of these arguments his statements do not amount to a waiver of the issues squarely before the trial court.
In the present case, Wright filed a "Motion for a Judgment on the Pleadings or, in the Alternative, for Summary Judgment on the Issue of Liability with Class Issues Reserved." Wright attached matters outside the pleadings to his complaint. Rule 12(c), Ala. R. Civ. P., provides that a motion for a judgment on the pleadings be treated as one for a summary judgment in accordance with Rule 56, Ala. R. Civ. P., whenever matters outside the pleadings are presented to and not excluded by the court. Not all matters outside the pleadings, however, convert a motion to a summary-judgment motion. See Donoghue v.American Nat'l Ins. Co., 838 So.2d 1032
(Ala. 2002) (insurance contract attached to a motion to dismiss did not convert that motion into a sumary-judgment motion because the complaint specifically referenced the policy, which was the foundation for the underlying claims). However, we need not resolve this issue because our decision in this case depends upon the resolution of a question of law — how § 15-12-21(d) should be interpreted. This Court accords the trial court's ruling no presumption of correctness as to a question of law. State Farm Mut. Auto. Ins. Co. v.Brown, 894 So.2d 643 (Ala. 2004). We now turn to the main issue — whether § 15-12-21 (d), as amended in 1999, provides for the payment of office-overhead expenses to lawyers appointed to represent indigent defendants. As noted earlier in this opinion, § 15-12-21(d) originally set out hourly rates and limits on total fees for attorneys representing indigent defendants and established that "[c]ounsel shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court." In 1999, the legislature amended § 15-12-21(d) to increase the hourly rates. In addition, the legislature changed the sentence that provided that counsel be reimbursed for "expenses reasonably incurred in such defense" to provide that counsel be reimbursed for "expenses reasonably incurred in thedefense of his or her client."
"It is an ingrained principle of statutory construction that `[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute. Ex parteLouisville N.R.R., 398 So.2d 291, 296 (Ala. 1981).'"Ex parte Fontaine Trailer Co., 854 So.2d 71, 83
(Ala. 2003) (quoting Carson v. City of Prichard,709 So.2d 1199, 1206 (Ala. 1998)). *Page 779 
In adopting statutes and amendments thereto "`"the Legislature is presumed to have known the fixed judicial construction preexisting statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction."'" Ex parte Fontaine TrailerCo., 854 So.2d at 83 (quoting Wood-Dickerson SupplyCo. v. Cocciola, 153 Ala. 555, 557, 45 So. 192, 192
(1907), quoting in turn Morrison v. Stevenson,69 Ala. 448, 450 (1881)). "[W]here a statute is reenacted without material change, `it must be assumed that the Legislature was familiar with its interpretation by this court and was satisfied therewith.'" Jones v. Conradi,673 So.2d 389, 392 (Ala. 1995) (quoting Nolen v. Clark,238 Ala. 320, 321, 191 So. 342, 343 (1939)).
In Hexcel Decatur, Inc. v. Vickers, 908 So.2d 237
(Ala. 2005), the employee sued his employer, alleging that he was terminated in violation of § 25-5-11.1, Ala. Code 1975, in retaliation for making a claim for workers' compensation benefits. The employer argued that the plain meaning of §25-5-11.1 requires the commencement of a civil action as a prerequisite to a retaliatory-discharge claim. The employer asked this Court to revisit its earlier decision in McClainv. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299 (Ala. 1991), interpreting § 25-5-11.1. McClain was released in 1991, and the legislature enacted major revisions to the workers' compensation law in 1992. The legislature also made further changes to the workers' compensation law in 1993, 1995, and 1996. However, the legislature did not amend §25-5-11.1 to correct the interpretation given that section inMcClain. This Court held:
 "Overruling McClain in the face of this legislative history would violate the rule that `[t]he Legislature, when it enacts legislation, is presumed to have knowledge of existing law and of the judicial construction of existing statutes.' Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814
(Ala. 2003). See also Ex parte Drummond Co., 837 So.2d 831, 835 n. 9 (Ala. 2002)('In 1968, this Court adopted the Belli v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968)] test. The Legislature has had more than 30 years to overrule or modify that decision; it has chosen not to do so. Moreover, in those 30 years, the Legislature has amended the Workers' Compensation Act. "`[W]hen the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate the statute, and it is presumed that the legislature deliberately adopted the statute with knowledge of this court's interpretation thereof.'"' (quoting Jones v. Conradi, 673 So.2d 389, 392
(Ala. 1995), quoting in turn Edgehill Corp. v. Hutchens, 282 Ala. 492, 495-96, 213 So.2d 225, 227-28 (1968))); Ex parte HealthSouth Corp., 851 So.2d 33, 41-42 (Ala. 2002)('Presumably, when the Legislature reenacts or amends a statute without altering language that has been judicially interpreted, it adopts a particular judicial construction.'). Had the Legislature disagreed with the interpretation of § 25-5-11.1 given by this Court in McClain, it could have easily amended § 25-5-11.1 in 1992, 1993, 1995, or 1996 when it changed, added, or repealed no less than 90 other sections of the Workers' Compensation Act. The Legislature has acquiesced in the holding of McClain, and to overrule that case now would be to disregard the doctrine of stare decisis."
908 So.2d at 240-1.
In 1999, when the legislature amended § 15-12-21(d), it was aware of the decisions of the appellate courts in May v.State, 672 So.2d 1307, Barksdale v. State,680 So.2d 1029, and Ex parte Smith, *Page 780 698 So.2d 219. In 1993, the Court of Criminal Appeals inMay and Barksdale held that office-overhead expenses are "expenses reasonably incurred" as that phrase is used in § 15-12-21(d). In 1997, this Court discussed the Court of Criminal Appeals' decisions in May andBarksdale and explicitly adopted the holding that § 15-12-21 authorizes the payment to a court-appointed attorney for office-overhead expenses reasonably incurred in the defense of an indigent defendant. Had the legislature intended to make such a broad sweeping change in contradiction to the earlier caselaw, it could have easily done so. The subtle change in the 1999 amendment to § 15-12-21(d) did not change the operative phrase "expenses reasonably incurred" addressed in May and Barksdale, but only the prepositional phrase following those words, and did not rise to the level of making a broad sweeping change that contradicted existing caselaw.
We recognize that a fundamental principle of statutory construction is that it is presumed that the legislature did not do a futile thing in enacting a statute. Ex parteWatley, 708 So.2d 890 (Ala. 1997). This rule operates to aid in determining the intent of the legislature.Smitherman v. Marshall County Comm'n, 746 So.2d 1001
(Ala. 1999). However, the rule "has no place here, where the legislature has merely recodified a provision that has
an established construction." Jones v.Conrad% 673 So.2d at 394 n. 14.
As stated earlier, the trial court made note of the legislature's 2002 joint resolution expressing its intent that Act No. 99-427 not affect the payment of office-overhead expenses. Although we agree with the comptroller that this joint resolution is not binding law, we do note that it was adopted by the same quadrennially elected legislative body that enacted Act No. 99-427. This Court has clearly stated, however, that "[a] resolution is not a law but merely the form in which the legislature expresses an opinion. The Legislature has no power to make laws by resolution." Gunter v. Beasley,414 So.2d 41, 43 (Ala. 1982). Therefore, even though Act No. 2002-129 set out the legislature's intent postenactment, it is not controlling in deciding the issue before us.
The comptroller argues that the 1999 amendment clarified an ambiguity regarding the payment of office-overhead expenses. (State comptroller's brief at 22-24.) However, given the judicial interpretation of § 15-12-21 before the 1999 amendment to the effect that office-overhead expenses were embraced in that section, there was no ambiguity in the phrase "expenses reasonably incurred" regarding the prior payment of office-overhead expenses. Therefore, there was at that time no ambiguity, but assuming that there was ambiguity, the legislature could have plainly stated that office-overhead expenses were nonreimbursable. Rather, it was the subtle change in the 1999 amendment to § 15-12-21(d) adding the language "in the defense of his or her client" that obviously created confusion, because after the amendment, there were opposing attorney general opinions in 2001 and 2005, a foot-note in an opinion by this Court in 2002 stating in dicta that office-overhead expenses were not payable, and a circuit court case upholding the payment of office-overhead expenses in 2002. Accordingly, the comptroller's argument that the 1999 amendment to § 15-12-21(d) resolved an ambiguity regarding the payment of office-overhead expenses and made it clear that office-overhead expenses were not reimbursable is not well taken.
Although there is no meaningful difference in the phrases "in such defense" and "in the defense of his or her client," it is important that we recognize that it was a footnote in an opinion of this Court that *Page 781 
has brought us here today. Indeed, the comptroller paid office-overhead expenses from 1999 to 2002. In 2001, the then attorney general issued an opinion addressing office-overhead expenses and concluded that based on the language of §15-12-21(d), even after the 1999 amendment, an attorney appointed to represent an indigent defendant could be reimbursed for office-overhead expenses even if the attorney worked out of his or her home.
The footnote in the opinion in Lyons and the 2005 attorney general opinion, which relied heavily onLyons, stand alone in concluding that the 1999 amendment to § 15-12-21(d) abolished the payment of office-overhead expenses. That conclusion cannot be inferred, as the State contends, from the "dramatic" increase in the hourly rates effected by the 1999 amendment and the change in the phrase from "such defense" to the more specific phrase "in defense of his or her client." The raise in the hourly rates in the 1999 amendment to § 15-12-21(d), without the payment of office-overhead expenses, is less than the pre-1999 hourly rates plus office-overhead expenses. Furthermore, the relevant language upon which the payment of office-overhead expenses was originally based in May was the phrase "expenses reasonably incurred." The legislature did not amend that phrase in 1999, thus reflecting the legislature's intent that lawyers appointed to represent indigent clients were still entitled to the payment of office-overhead expenses, the intent reflected by the non-binding joint resolution of the legislature.
The parties raise the issue whether the Covington Circuit Court's decision in Christensen v. Childree is binding on the comptroller. In light of our resolution regarding the interpretation of § 15-12-21(d), as amended, it is not necessary to address this issue.
As noted previously, this appeal and cross-appeal arise out of the trial court's order entered in response to Wright's "Motion for a Judgment on the Pleadings or, in the Alternative, for Summary Judgment on the Issue of Liability with Class Issues Reserved." The trial court certified its order as final pursuant to Rule 54(b), Ala. R. Civ. P. As a practical matter, what the trial court did was to rule on Wright's claim that § 15-12-21 (d), as amended, required the comptroller to pay office-overhead expenses to lawyers appointed to represent indigent defendants. In affirming that order today, we do not reach the other issues Wright asks us to address on appeal; those issues remain pending before the trial court.
 Conclusion
Section 15-12-21(d), as amended in 1999, provides for the payment of office-overhead expenses to lawyers appointed to represent indigent defendants in Alabama. Accordingly, the trial court's judgment is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL,* STUART, SMITH, and PARKER, JJ., concur.
* Although Justice Woodall was not present at oral argument, he has viewed the videotape of that oral argument.
[1] Although the indigent defendants in the cases to which this opinion is directed are criminal defendants, we note that in civil proceedings that provide for the appointment of counsel — for example, whether as an attorney or a guardian ad litem, as in a civil-commitment case (§22-52-14, Ala. Code 1975), or as an attorney in a case involving a waiver of parental consent to an abortion (§ 26-21-4, Ala. Code 1975)"the statutes governing such civil proceedings provide that attorneys appointed in those proceedings shall also be compensated under § 15-12-21, Ala. Code 1975.
[2] Wright attached several documents to his complaint, including the Talladega Circuit Court's standing order pre-approving an hourly rate for office-overhead expenses,Op. Att'y Gen., No. 2005-063, and the Covington Circuit Court's order in Christensen v. Childree, no. CV-2002-50.
[3] Wright's notice of appeal acknowledges that he did not request interest in the original complaint but states that he did request interest in motions filed in the trial court.
[4] The original opinion, issued on November 30, 2001, was withdrawn when the March 15, 2002, opinion was issued. *Page 782