THOMAS, Judge.
Michael Joe Green, Johnny James Brown, and Aletha Johnson (hereinafter referred collectively to as “the claimants”) appeal from a judgment of the Montgomery Circuit Court in favor of the City of Montgomery and J.J. Allen and Henry Davis, officers employed by the Montgomery Police Department (hereinafter referred to collectively as “the defendants”). We reverse and remand.
This is the second time this matter has been before this court. We recited the underlying facts and procedural history of this case in Green v. City of Montgomery, 55 So.Sd 256 (Ala.Civ.App.2009),[1] thusly:
“On December 6, 2006, Montgomery police officers stopped the claimants as they were traveling through Montgomery on Interstate 65. While issuing the claimants a speeding ticket, the officers smelled a strong marijuana odor and noticed a large amount of cash in a bag on the floorboard behind the passenger seat. When asked how much money was in the bag, the claimants responded, ‘about $20,000.’ The officers asked for permission to search the vehicle, and the claimants did not respond. The officers ordered a K-9 unit to the scene to con *1197 duct an open-air search. The search resulted in a positive identification of marijuana in the passenger door. The officers then conducted a full search of the vehicle that produced a small amount of marijuana and additional cash. The officers seized the marijuana and all the cash, totaling $32,353. Johnny James Brown, the claimant closest to the marijuana, was charged with unlawful possession of marijuana in the second degree, a misdemeanor. See § 13A-12-214, Ala. Code 1975.
“The difference between first-degree and second-degree unlawful possession is whether the marijuana is for personal use. Id. Despite having charged Brown with the lesser, personal-use offense, the City [of Montgomery] transferred the seized currency to the federal Drug Enforcement Administration (‘DEA’) pursuant to an arrangement whereby the City would receive 80% of the money and the DEA would retain 20% of the money as a fee. This process is known as ‘adoptive seizure.’ See 21 U.S.C § 881 (2002).
“The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investigation or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. See I.R.S. Manual 9.7.2.7.3 (July 25, 2007); Asset Forfeiture Law, Practice, and Policy, Asset Forfeiture Office, Criminal Division, United States Department of Justice, Vol. I (1988) at 38 (cited in Johnson v. Johnson, 849 P.2d 1361, 1363 (Alaska 1993)). Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin. At the successful conclusion of those proceedings, usually 80% of the forfeited property is given back to the state or local agency.
“In the present case, the seizure occurred on December 6, 2006. The City filled ■ out the requisite forms to begin the adoptive-seizure process on December 27, 2006. During the time that the United States Department of the Treasury was reviewing the City’s adoptive-seizure request, the claimants filed a ‘Complaint and Motion for Release and Return of Seized Money[1] in the Montgomery Circuit Court on December 29, 2006. The DEA formally adopted the seizure on January 11, 2007, and United States Marshals took custody of the money on January 23, 2007.
“One week later, the City removed the claimants’ circuit court action to federal court to address the claimants’ Fourteenth Amendment claim. The claimants subsequently amended their complaint, deleting the Fourteenth Amendment claim and asking that the case be remanded to the Montgomery Circuit Court. The case was remanded on April 17, 2007. However on February 7, 2007, while the case was still in federal court, the claimants were notified of the DEA forfeiture proceeding and made no response.
“With the case back in the Montgomery Circuit Court, the claimants filed on April 26, 2007, a motion to dismiss their case; the circuit court granted the motion the same day. Arguing that they had made a clerical error in the caption and that the motion should have been *1198 styled as a motion for a summary judgment consistent with the substance of the motion, the claimants convinced the circuit court to reinstate the case on August 3, 2007. In the period between the dismissal and the reinstatement of the claimants’ action, the DEA deposited the seized currency in the Asset Forfeiture Fund.
“On April 24, 2008, the City filed a motion for a summary judgment, arguing that the circuit court no longer had jurisdiction over the seized currency. The circuit court granted the City’s motion on May 13, 2008. The claimants filed a timely postjudgment motion, which the circuit court denied on September 3, 2008. The claimants filed a timely notice of appeal with this court on October 15, 2008.”
55 So.3d at 258-59.
In Green, this court held that “[t]he claimants’ action in state court was an in rem or quasi in rem action, and it invoked state in rem jurisdiction before the federal government attempted to acquire jurisdiction.” Id. at 265. Accordingly, because we held that the Drug Enforcement Agency (“the DEA”) had never acquired jurisdiction over the currency, we reversed the summary judgment entered by the trial court in favor of the defendants and remanded the cause to the trial court “so that the claimants may assert any and all defenses to the seizure and forfeiture under state law.” Id.
On remand, the claimants moved the trial court for a summary judgment, arguing (1) that the defendants had lacked probable cause to seize the currency and (2) that the State had failed to promptly file a forfeiture action regarding the currency,[2] thereby, the claimants said, requiring the defendants to return the currency to the claimants. The defendants opposed the claimants’ motion for a summary judgment, arguing that the currency had been validly seized pursuant to § 20-2-93, Ala. Code 1975, and that the action filed by the claimants met the requirement under that statute that the State file a forfeiture proceeding because, the defendants argued, the action sought disposition of the currency. The trial court denied the claimants’ summary-judgment motion.
The trial court later held a hearing on the claimants’ complaint, at which it heard ore tenus evidence. Following the hearing, on January 26, 2011, the trial court entered a judgment in favor of the defendants. In its judgment, the trial court determined that the defendants had had probable cause to seize the currency. The trial court also determined that the seized currency had been transferred from the City to the DEA, that the currency had then been taken into custody by the United States Marshals Service, and that the DEA had conducted an administrative-forfeiture proceeding, resulting in the forfeiture of the currency.
The claimants filed a postjudgment motion, arguing that the trial court had not addressed the issue whether the State had promptly filed a forfeiture action. The claimants’ postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The claimants subsequently appealed to this court.
The trial court entered its judgment after hearing ore tenus evidence.
*1199 “ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007). Additionally, this court reviews questions of law de novo. See Wright v. Childree, 972 So.2d 771, 778 (Ala.2006) (“This Court accords the trial court’s ruling no presumption of correctness as to a question of law.”).
On appeal, the claimants argue that the trial court erred by not ordering the return of the currency because, the claimants say, the State failed to promptly institute forfeiture proceedings pursuant to § 20-2-93.[3] We agree.
The trial court did not specifically state in its judgment whether the State had promptly filed a forfeiture action or whether the currency had been forfeited under state law; however, the trial court did state that the currency had been forfeited through the DEA’s administrative-forfeiture proceedings.
In Green, we determined that, when the claimants filed their complaint in the trial court, the trial court had acquired jurisdiction over the currency, thereby excluding the DEA from exercising jurisdiction. Green, 55 So.3d at 265. Because the trial court had jurisdiction over the currency, and because concurrent jurisdiction over the currency is prohibited, id. at 259, any attempted forfeiture proceeding conducted by the DEA was ineffectual. Id. at 265. Therefore, the trial court could not have relied on the administrative-forfeiture proceeding conducted by the DEA to determine that the currency had been forfeited.
Although the trial court erred in relying on the administrative-forfeiture proceeding conducted by the DEA to determine that the currency had been forfeited, this court may affirm the trial court’s judgment on any valid legal ground. See Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1082 (Ala.2004) (quoting General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala.2003), quoting in turn Liberty Nat’l Life Ins. Co. v. Uni *1200 versity of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)) (‘“This [c]ourt may affirm a trial court’s judgment on “any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.” ’ ”). Therefore, we will now turn to the question whether the currency has been forfeited pursuant to the provisions of § 20-2-93.
The currency was subject to forfeiture pursuant to § 20 — 2—93(a)(9), which allows seizure of “[a]ll property of any type whatsoever constituting, or derived from, any proceeds obtained directly, or indirectly, from any violation of any law of this state concerning controlled substances.” The defendants seized the currency pursuant to § 20 — 2—93(b)(4), which provides, in pertinent part, that property subject to forfeiture may be seized without process if the “municipal law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of’ the controlled-substances laws. Section 20-2-93(c) provides that, “[i]n the event of seizure pursuant to subsection (b) of this section, proceedings under subsection (d) of this section [ — i.e., forfeiture proceedings — •] shall be instituted promptly.”
As this court explained in State v. Chesson, 948 So.2d 566 (Ala.Civ.App.2006):
“ ‘ “The mandate in [§ 20-2-93(c), Ala. Code 1975,] that forfeiture proceedings be instituted promptly is necessary to the statute’s constitutionality.” ’ Adams v. State ex rel. Whetstone, 598 So.2d 967, 969 (Ala.Civ.App.1992) (quoting Reach v. State, 530 So.2d 40, 41 (Ala.1988)). Furthermore, a forfeiture proceeding that is not instituted promptly is ineffectual. Adams, 598 So.2d at 969. ‘The term “promptly” has been construed to mean within a reasonable time in light of all the circumstances.’ State v. $17,636.00 in United States Currency, 650 So.2d 900, 901 (Ala.Civ.App.1994).
“This Court has addressed the issue of promptness under this statute. In Winstead v. State, 375 So.2d 1207 (Ala. Civ.App.1979), and Eleven Automobiles v. State, 384 So.2d 1129 (Ala.Civ.App. 1980), this Court ruled that instituting forfeiture proceedings three and one-half weeks and four weeks, respectively, after a seizure is permissibly prompt. This Court has also held that a 14-week delay between the seizure and the initiation of forfeiture proceeding was not excessive. Moynes v. State, 555 So.2d 1086, 1088-1089 (Ala.Civ.App.1989). However, in Adams, 598 So.2d at 969, this Court found that a delay of 10 weeks between the seizure of the property and the institution of the forfeiture proceedings did not meet the promptness requirement of § 20-2-93(c), Ala. Code 1975, when the record reflected no reason for the delay. This Court has stated that, without legislative guidance, ‘the facts and circumstances of each case may cause [the] issue [of promptness] to be decided on a case by case basis.’ Adams, 598 So.2d at 970.”
948 So.2d at 568-69. In $3,011 in United States Currency v. State, 845 So.2d 810, 814 (Ala.Civ.App.2002), this court stated that, “[a]s the Supreme Court noted in Lightfoot [v. Floyd, 667 So.2d. 56 (Ala.1995),] ‘[w]hat is “prompt” is decided on the facts of a given case, but a fairly short time frame,’ i.e., less than 7 to 10 months, ⅛ evident from the cases addressing the issue.’ 667 So.2d at 66 (collecting cases).”
In this case, the defendants seized the currency from the claimants on December 6, 2006 — more than four years before the trial court entered its judgment denying the claimants’ complaint seeking the return of the currency. During this four-year period, the State never filed a forfeiture action relating to the currency. *1201 Presumably, the State, relying on the administrative-forfeiture proceedings conducted by the DEA, was under the impression that it did not need to file a forfeiture action in state court. However, as we held in Green, the DEA lacked jurisdiction over the currency; therefore, its administrative-forfeiture proceeding was ineffectual. Green, 55 So.3d at 264-65. Even if we were to forgive the State’s delay in filing a forfeiture action in state court until after we released our opinion in Green, in which we held that the DEA’s attempted administrative-forfeiture proceeding was ineffectual, we still could not conclude that the State had promptly instituted a forfeiture action relating to the currency. Over 18 months passed between this court’s release of our opinion in Green and the entry of the trial court’s judgment. There is no evidence indicating that the State instituted a forfeiture proceeding during that period. Thus, any forfeiture proceeding filed by the State at this time would undeniably fail to meet the requirement in § 20-2-93(c) that the action be instituted “promptly.” See Chesson, 948 So.2d at 568-69.
Because the DEA did not have jurisdiction over the currency when it attempted to conduct administrative-forfeiture proceedings, and because the State did not promptly file a forfeiture proceeding in state court related to the currency, the claimants are entitled to a return of the currency. Therefore, we reverse the judgment of the trial court and remand the cause to that court with instructions to enter a judgment in favor of the claimants.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. In Green, the city of Montgomery was identified as the only appellee. However, the summary judgment at issue in Green, which this court reversed, was actually entered in favor of all the defendants.

. The State, not the City, is the party with standing to initiate a forfeiture action pursuant to § 20-2-93, Ala.Code 1975. See State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027-28 (Ala.1999) (holding that § 20-2-93 incorporates the procedures set out in § 28-4-286 et seq., Ala.Code 1975, specifying that a drug-related forfeiture action is to be filed in the name of the State).

. The claimants couch part of their argument on appeal as a challenge to the trial court’s denial of their summary-judgment motion.
" ‘[W]e do not review a trial court's denial of a summary-judgment motion following a trial on the merits. See Grayson v. Hanson, 843 So.2d 146 (Ala.2002); Superskate, Inc. v. Nolen, 641 So.2d 231, 233 (Ala.1994); see also Lind v. United Parcel Service, Inc., 254 F.3d 1281, 1283-84 (11th Cir.2001).’ ”
Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1205 (Ala.2006) (quoting Mitchell v. Folmar & Assocs., LLP, 854 So.2d 1115, 1116 (Ala.2003)). After denying the claimants’ summary-judgment motion, the trial court held a hearing and then entered a judgment on the merits of the case. Therefore, we will address only the question whether the trial court’s judgment was in error, not whether it should have entered a summary judgment in favor of the claimants.